The People ex rel. Woodworth agt. Burrows, Comptroller.

---

## SUPREME COURT.

The People *ex rel.* JOHN WOODWORTH agt. LORENZO BURROWS, Comptroller, &c.

There is no question but what the transaction by which a *judge* accepts the office conferred upon him by an act of the legislature, with a salary attached to the same, and impliedly undertakes the faithful performance of its duties, is a *contract* within the meaning of the constitution.

But *it seems* that the nature of this contract is such, that the legislature may, during the term of office, alter the amount of the salary from time to time, (where no prohibition is contained in the constitution,) without impairing the obligation of contract, within the meaning of the constitution of the United States.

*It seems*, there is no stipulation on the part of the legislature, either express or implied that they shall not alter the salary. And the appointee accepts the office with a knowledge of this power, and under an implied consent that its exercise shall be left to the decision of the legislature.

On a proceeding by *mandamus*, to compel the comptroller of the state to pay the alleged salary of a judicial officer, a defence by the comptroller that no *appropriation* has ever been made by law for the payment of such claim, as required

**28**        NEW-YORK PRACTICE REPORTS.

The People ex rel. Woodworth agt. Burrows, Comptroller.

. by the 8th section of the 7th article of the constitution, is a conclusive answer to the application.

*Albany General Term, March,* 1858.

WRIGHT, GOULD *and* HOGEBOOM, *Justices.*

THIS was an appeal from an order of Mr. Justice WRIGHT, at special term, denying a motion for a peremptory mandamus. The object of the writ was to compel the comptroller to draw his warrant on the treasurer in favor of the relator, for an amount of $3,781, alleged to be due to him from the state, for a portion of his salary as a former justice of the supreme court; and also for $8,966 as interest upon the former sum to the first day of August, 1857. The relator's claim arose under these circumstances, as set forth in the alternative mandamus:

He was appointed a justice of the supreme court, on the 28th of March, 1819, during the existence of a law which fixed his salary at the annual sum of $4,500, and during the existence of a constitution which fixed his term of office during good behavior, or until the age of sixty years.

This age he attained on the 12th of November, 1828. He continued to discharge the duties of his office until the 7th day of February, 1823, when he was displaced by a justice of the supreme court, appointed under the new judicial system inaugurated by the constitution of 1821, which in effect abolished the former court, and terminated the official career of the former incumbents, on the appointment of their successors. Before the adoption of this constitution, however, the legislature, by an act passed on the first of April, 1820, reduced the annual salaries of justices of the supreme court to $3,500; and by an act passed on the 3d of April, 1821, to $3,000. The relator claims that these attempted reductions of his salary were null and void under that clause of the constitution of the United States, which forbids any state to pass any law impairing the obligation of contracts, and therefore seeks to recover, in this form of proceeding, the difference between the sums paid under the later acts of the legislature, and that in force at the time of his original appointment. The comptroller returned to the writ of alternative mandamus,

1. That the relator had been paid his salary in full, and that nothing was due to him.

2. That no appropriation had ever been made by law for the payment of the relator's claims, as required by the 8th section of the 7th article of the constitution.

To this return the relator demurred. The court below sustained the demurrer, and denied the motion for a peremptory mandamus, and from the order entered thereon, the relator appeals.

JOHN WOODWORTH, *in person, and* J. H. REYNOLDS, *for relator.*

LYMAN TREMAIN, *Attorney-General, for defendant.*

By the court—HOGEBOOM, Justice. The learned and venerable relator has presented an argument of much ingenuity and force, in favor of the allowance of a peremptory mandamus ; and it would afford the court high gratification, if, in consideration of his eminent and faithful services as a former justice of the supreme court, it were possible, consistently with the rules of law, to award the mandamus in question.

The application is based upon the supposed inability of the legislature to reduce the salary of a judge during his term of office, after it shall have been once fixed by law ; and the ground of this alleged inability is, that it violates the constitution of the United States, by impairing the obligation of a contract. It is not necessary to deny, that the transaction by which a judge accepts the office conferred upon him by an act of the legislature, with a salary attached to the same, and impliedly undertakes the faithful performance of its duties, is a contract within the meaning of the constitution. The more important question is, what is the nature of the contract? What are the conditions embraced in it, and what are the limitations under which it is accepted. The legislature having fixed the compensation, have they not the right to alter it, from time to time, as the public exigencies require ? Is there any absolute stipulation on their part, either expressed or im-

The People ex rel. Woodworth agt. Burrows, Comptroller.

plied, that they shall not do so? Does not the appointee accept the office with a knowledge of this power, and under an implied consent that its exercise shall be left to the decision of the legislature? Is the appointment in the nature of a grant upon sufficient consideration, which the legislature cannot afterwards 'either revoke or modify? Are there in the case vested rights which cannot be interfered with? If the office is conferred during good behavior, or for life, or until the incumbent reaches the age of sixty years, is the duration of the term beyond subsequent legislative control? Is the office itself an immortality—to endure forever? And if the legislature, or the people whom they represent, can abolish the office, can they not shorten the term, or curtail the salary? Do all public officers of every grade and description, hold their places by the same immovable tenure, and at the same unalterable compensation? If the legislature pass a law that parties in an action shall recover costs after an established rate, may they not alter it afterwards, even after suits are commenced upon the faith and expectation of receiving the stipulated compensation? Concede that after services are actually rendered by a judge under an established salary, he must receive that amount, is it an unbending rule for the future, as well as the past?

These are all questions bearing more or less upon the case in hand. The question is not without difficulty. The relator has the high authority of an *obiter dictum* of Mr. Justice STORY, of the supreme court of the United States, in the famous Dartmouth College case, in favor of his construction of the inviolability and effect of such a contract; but the case put was merely for the purpose of illustration, and is of no binding force as authority. We do not consider ourselves required to pass upon it now, there being other aspects of the case which in our view control it, and forbid the issuing of a peremptory mandamus. It is worth while, however, to notice that the convention which formed the constitution of the United States, convinced of the existence of legislative power over this subject, or else from motives of extreme caution, saw fit to incor-

porate in that constitution, a clause that the salary of justices of the supreme court shall not be *diminished* during their term of office, and our constitution contains a clause that it shall neither be diminished nor increased during the same period.

The argument of the relator, so far as it is founded upon the supposed incompetency of the legislature to disturb judicial salaries, on the ground that it would interfere with the independence of the judiciary, strikes us as of less weight. It is aimed, not so much at the existence of the power, as the expediency of its exercise. It is an argument more properly addressed to the legislature itself, or to the people in convention, than to the courts. It would scarcely answer, we think, for judicial tribunals to overrule and annul legislative action upon considerations of so general and indefinite a character.

The independence of the judiciary is an object of the highest moment, and worthy of the most studious and patriotic efforts to secure its accomplishment; but so far as it is to be secured by placing judicial salaries above the fluctuations of party, or the appeals of partisan demagogues, it must be done, we think, by constitutional provisions, and not by judicial legislation.

It remains to consider the additional defences against this application, which are set up in the comptroller's return to the alternative writ, and which being demurred to for insufficiency, are admitted, so far as they contain allegations of fact.

The first is, that the relator's salary has been fully paid. It is difficult to see, whether this is intended as an allegation of fact or of law. If the former, then it negates the averments in the alternative mandamus, as to the non-payment of the sums therein mentioned, and is a complete defence to the application.

If the latter, then it simply presents the legal question already discussed.

The second defence interposed by the comptroller is, that no appropriation has ever been made by law for the payment of the claim, as required by the 8th section of the 7th article of the constitution. And this we regard as a conclusive answer

to the application. The provision is general and imperative. It embraces all cases where money is sought to be drawn from the treasury of the state. It is designed as an absolute and compulsory restriction upon every disbursement upon the treasury, except under the sanction of a legislative appropriation, specifying distinctly the object to which it is to be applied, thus imposing a salutary and needed check upon the disbursement of the public funds.

We think there can be no doubt that this provision is applicable as well to claims against the state, existing prior to the constitution of 1846, as those subsequent. The reason of the rule is the same, and the mischiefs of a contrary practice are equal in either case. In the case at bar, conceding the existence of a valid claim against the state, there has been no appropriation by law for its payment, and the comptroller would be guilty of official misconduct if he should draw a warrant on the treasury in favor of the appellant.

The order of the special term, denying a peremptory mandamus, must be affirmed.